UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JERROLD KESTENBERG,<br><br>       Plaintiff,<br><br>       v.<br><br>ROBERT C. DWYER and<br>TIMOTHY FURLONG,<br><br>       Defendants. | No. 20-cv-11514-DLC |

**ORDER ON DEFENDANTS' MOTION TO DISMISS (D. 8)**

Plaintiff Jerrold Kestenberg alleges that officers violated his Fourth Amendment rights by surveilling his residence without a warrant. He brings suit under 42 U.S.C. § 1983 against then Nahant Police Officer Timothy Furlong and Nahant Police Chief Robert Dwyer. The defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a viable claim; the plaintiff opposes. (D. 8, 12). For the reasons explained below, the court will allow the motion to dismiss.

**RELEVANT FACTS**

The facts are taken from the complaint (D. 1) and are accepted as true for purposes of the present motion.

The plaintiff previously resided in Nahant. During that time, he and his then girlfriend, Laura Scarpaci, became involved in a heated feud with their neighbors, Enrichetta Ricciardelli and Luciano Montefusco. (*Id.* ¶¶ 6-10).

Ricciardelli obtained a no-harassment order against Scarpaci by default in 2015, and Scarpaci obtained a stay away order against Montefusco.  (*Id.* ¶¶ 12-13).

At some point during 2015 or 2016, Ricciardelli began repeatedly contacting the Nahant police to complain that Scarpaci was violating the no-harassment order.  (*Id.* ¶ 14).  In the course of these contacts, Ricciardelli developed inappropriately close relationships with certain Nahant police officers, including Officer Furlong. (*Id.* ¶ 16).  The officers would visit Ricciardelli's home and spend time conversing with her, and she deposited evidence allegedly against Scarpaci with Officer Furlong for safekeeping.  (*Id.* ¶¶ 17-18).

When Ricciardelli reported to police that Scarpaci was routinely violating the no-harassment order on Wednesday afternoons, Officer Furlong set up surveillance in what he described as an "undercover sting operation."  (*Id.* ¶¶ 19-20). Officer Furlong stated that Chief Dwyer gave him permission to conduct the surveillance but no officer obtained a search warrant to conduct the surveillance.  (*Id.* ¶¶ 27-28).

During the surveillance, Officer Furlong or another officer would sit in an unmarked car near the plaintiff's home, where they could observe activity in the plaintiff's yard, and "quite likely in the interior of his home."  (*Id.* ¶¶ 21-22).  After

2

several weeks, the Nahant Police ended the surveillance because they saw no indication that Scarpaci was violating the no-harassment order.  (*Id.* ¶¶ 23, 26).

Kestenberg did not learn about the surveillance until 2019. (*Id.* ¶ 24).

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state claim.  In deciding such a motion, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Simply put, the court should assume that well-pleaded facts are genuine and then

determine whether such facts state a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

The plaintiff contends that officers violated his Fourth Amendment rights by failing to obtain a warrant before surveilling his residence. In moving to dismiss, the defendants argue that the Fourth Amendment is not implicated on these facts because the plaintiff had no expectation of privacy in any part of his residence that could be seen from the street, and no warrant therefore was required to conduct surveillance. They argue further that, even assuming a warrant was required, the officers are entitled to qualified immunity because no reasonable officer in their position would have clearly understood their actions to amount to a violation of the plaintiff's constitutional rights. The court agrees.

**No Warrant Was Needed to Observe the Plaintiff's Home From the Street**

Distilled, the complaint alleges that Officer Furlong "or some other" police officer, at some point in 2016, after receiving permission from Chief Dwyer, and for a period of "several weeks," would "sit in an unmarked car near" the plaintiff's and his neighbor's homes, probably "on Wednesday afternoons," in a spot that allowed officers to observe the

4

plaintiff's yard and "quite likely" the interior of his home as well. The plaintiff contends that this activity constituted a Fourth Amendment search requiring a warrant.

The Fourth Amendment protects people from unreasonable searches. *Katz v. United States*, 389 U.S. 347 (1967). To show that the officers' surveillance amounted to an unreasonable search here, the plaintiff must show that he had a reasonable expectation of privacy in the place searched, which in turn entails showing that (1) he has exhibited an actual, subjective expectation of privacy in the area searched, and (2) his subjective expectation is one that society is prepared to recognize as objectively reasonable. *United States v. Rheault*, 561 F.3d 55, 59 (1st Cir. 2009).

The defendants argue that even accepting the plaintiff's allegations as true, he cannot show that he had an objectively reasonable expectation of privacy in any area Officer Furlong could observe from the street. They are correct. Courts have resoundingly rejected the notion that people may have an objective expectation of privacy in what the naked eye can observe from a public vantage point. "An individual does not have an expectation of privacy in items or places he exposes to the public." *United States v. Bucci,* 582 F.3d 108, 116 (1st Cir. 2009) (no reasonable expectation of privacy in driveway or

5

garage interior which officers surveilled for eight months by placing a video camera on a utility pole across from defendant's residence); *see also Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *Maryland v. Macon*, 472 U.S. 463, 469 (1985) ("What a person knowingly exposes to the public is not a subject of Fourth Amendment protection[.]") (citation and internal punctuation omitted); *California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares"); *United States v. Roccio*, 981 F.2d 587, 591 (1st Cir. 1992) ("there is no expectation of privacy in a driveway that is exposed to the public") (citing *United States v. Hensel*, 699 F.2d 18, 32-33 (1st Cir. 1983)).

However, a person may be found to have an objectively reasonable expectation of privacy in their curtilage or home interior where a law enforcement officer has physically entered the curtilage area to gather evidence. *See Florida v. Jardines*, 569 U.S. 1, 5-6 (2013). In such an instance, a search within the meaning of the Fourth Amendment has occurred and such conduct "is presumptively unreasonable absent a warrant."

*United States v. Owens,* 917 F.3d 26, 34 (1st Cir. 2019) (citing *Collins v. Virginia,* 138 S. Ct. 1663, 1670 (2018)). By contrast, an officer's naked-eye observations of a home from the street do not amount to a search requiring a warrant or otherwise implicate the Fourth Amendment. *See, e.g., Bucci,* 582 F.3d at 116 (no reasonable expectation of privacy in driveway or garage interior); *Ciraolo*, 476 U.S. at 213-14 (warrantless aerial observation of fenced-in backyard deemed curtilage did not violate Fourth Amendment).

That is the case here. The complaint does not allege that officers transgressed the curtilage or did anything more than observe the plaintiff's yard and "quite likely" the interior of his residence from the street. Assuming that is what occurred, the precedent cited makes clear that none of this activity amounted to a search implicating the Fourth Amendment, because the plaintiff had no objectively reasonable expectation of privacy in any area exposed to the public. It follows that the defendants did not violate the plaintiff's rights in facilitating or conducting a warrantless surveillance of his residence from the street.

To be sure, the plaintiff cites to a number of cases in his opposition but none of them suggests that an officer's naked-eye observations from the street of an area exposed to the public

may constitute a Fourth Amendment search requiring a warrant. The plaintiff in particular cites to the Massachusetts Supreme Judicial Court's (SJC) recent decision in *Commonwealth v. Mora*, 485 Mass. 360 (2020), but his reliance on the case is unavailing. In *Mora*, the SJC held that the continuous pole camera surveillance of the exterior of two residences for at least two months constituted a search under article 14 of the Massachusetts Declaration of Rights. *Id.* at 376-77. The plaintiff argues that *Mora* is supportive and instructive to the extent the SJC found the mere surveillance of a home's exterior to constitute a search requiring a warrant. However, putting aside that *Mora* involved a consideration of Massachusetts' state constitution rather than the U.S. Constitution, and regardless is not binding on this court, the SJC was specifically concerned with an issue not in play here, namely the long-term use of pole cameras that allow officers to create a "mosaic" and obtain a "far richer profile" of a person's life than would be possible through human surveillance. *Id.* The SJC held that a continuous pole camera search exceeding two months was a "search" under Massachusetts' state constitution, but acknowledged at the same time that a "briefer period" "might not implicate the same reasonable expectation of privacy." *Id.* In any event, the SJC in no way deigned to address whether an officer parked on the

8

street must obtain a warrant to look into a yard or window that is visible to the public.

### **Assuming a Violation, the Defendants Are Entitled to Qualified Immunity**

Even assuming *arguendo* that the surveillance of the plaintiff's residence somehow amounted to a violation of his Fourth Amendment rights, the defendants would be entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  In determining whether a defendant is entitled to qualified immunity, a court should consider: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Ciolino v. Gikas*, 861 F.3d 296, 303 (1st Cir. 2017).  The second prong has two components: "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer

9

would have understood that his conduct violated the right." *Id*. While qualified immunity cannot protect Officer Furlong or Chief Dwyer from liability if, on an objective basis, no reasonably competent officer would have acted as they did, "if officers of reasonable competence could disagree on [the lawfulness of the alleged conduct], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, the defense of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 349.

Here, even assuming the facts as alleged were read to make out a violation of a Fourth Amendment right to be free from an unreasonable, i.e., warrantless search, that right was not so clearly established in 2016 that a reasonable officer would have understood the officers' actions to be improper. On the contrary, and as discussed above, courts have consistently affirmed that an officer standing in the street needs no warrant to observe whatever may be visible to the public, and the court has not been directed to any decision calling this proposition into question. To the extent the plaintiff argues that *Mora* applies and reflects a change in the law, *Mora* notably was not decided until 2020, years after the events in question here.

**CONCLUSION**

In sum, the defendants did not violate the plaintiff's Fourth Amendment rights even taking all the complaint's factual allegations as true. The defendants would enjoy qualified immunity in any event because no officer in their position would have clearly understood their actions to be improper. Accordingly, Defendants Robert C. Dwyer and Timothy M. Furlong's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (D. 8) is GRANTED. The complaint is hereby dismissed.

**So Ordered**.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: September 22, 2021